

**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

MWG:RMU
F. #2025R00399

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

July 21, 2025

<u>By Email</u>

The Honorable Vera M. Scanlon
United States Magistrate Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re:   United States v. Jakhi McCray
> <u>Magistrate Docket No. 25-MJ-238</u>

Dear Judge Scanlon:

The government respectfully submits this letter in support of its request that the Court enter an order of detention against Jakhi McCray, whose initial appearance is scheduled before Your Honor later today, July 21, 2025. The defendant has been charged by complaint with arson, in violation of Title 18, United States Code, Section 844(i). As set forth below, the defendant set fire to New York Police Department ("NYPD") vehicles the Thursday before protests were scheduled to be conducted over the June 14-15 weekend, thereby compromising NYPD resources to protect and secure the public. Given the nature of the crime charged, there is a statutory presumption of detention, and the defendant should be detained as he poses a significant danger to the community and a risk of flight.

I.      <u>Background</u>

As captured on surveillance video, on the night of June 12, 2025, at approximately 12:52 a.m., the defendant was seen scaling the fence into a locked parking lot located on DeKalb Avenue between Wilson Avenue and Central Avenue in Brooklyn, New York. The lot is a private, secure parking lot for reserve NYPD vehicles assigned to precincts in northern Brooklyn. The defendant chose to light the NYPD vehicles on fire the Thursday night before protests were scheduled to be conducted over the June 14-15 weekend, thereby compromising NYPD resources used to protect and secure the public.

The defendant remained in the locked parking lot for approximately 30 minutes, during which time he lit ten NYPD vehicles and one trailer on fire.  See Figure 1 below.  At approximately 1:24 a.m., an NYPD Officer came to inspect the lot.  As he approached the lot, the Officer saw the fire and saw the defendant attempting to scale a fence to flee the area.  The defendant ultimately fled through an existing hole in the fence and was seen going north on Hart Street.



**FIGURE 1**

On the morning of June 12, 2025, after the defendant had fled the scene, NYPD personnel discovered what appeared to be a cigar lighter torch and a pair of sunglasses in the portion of the lot where the defendant had hopped the fence and made entry to the lot.  NYPD personnel also discovered that 12 retail fire starters ("jealous devil boom starters") and 10 BBQ dragon egg fire starters were placed on three unburnt vehicles.  Below in Figure 2 are photographs of the lighter (left) and two fire starters on an unburnt vehicle (right).



**FIGURE 2**

2

Fingerprints were obtained from the recovered sunglasses, and analysis of these fingerprints indicated that they were consistent of the fingerprints of the defendant. The individual seen on video surveillance committing this arson also has a height and build that is consistent with the defendant's height and weight, according to NYPD records.

NYPD has estimated the total replacement cost of the NYPD vehicles lit on fire by the defendant is over $800,000.

II.    Legal Standard

Under the Bail Reform Act, Title 18, United States Code, Section 3141 et seq., federal courts are empowered to order a defendant's detention pending trial upon a determination that "no condition or combination of conditions would reasonably assure the appearance of the person as required and the safety of any other person and the community[.]" 18 U.S.C. § 3142(e). A finding of dangerousness must be supported by clear and convincing evidence. See United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995). A finding of risk of flight must be supported by a preponderance of the evidence. See United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987).

Where, as here, a defendant is charged with arson, in violation of 18 U.S.C. § 844(i), there is a statutory presumption that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of the community." See 18 U.S.C. § 3124(e)(3).[1] To rebut this statutory presumption, the defendant must come "forward with evidence that he does not pose a danger to the community or a risk of flight." United States v. Mercedes, 254 F.3d 433, 436 (2d Cir. 2001) (per curiam). If this burden of production is satisfied, the government retains the burden of persuasion by clear and convincing evidence that the defendant presents a danger to the community and by a preponderance of evidence that the defendant presents a risk of flight. Id. Even if a defendant can overcome the presumption, the special risk of dangerousness posed by defendants who have committed such crimes "remains a factor to be considered among those weighed by the district court." Mercedes, 254 F.3d at 436.

Whether detention is sought on the basis of flight or dangerousness, the Bail Reform Act lists four factors to be considered in the detention analysis: (1) the nature and circumstances of the crimes charged, "including whether the offense is a crime of violence . . . or involves a . . . firearm, explosive, or destructive device"; (2) "the weight of the evidence against the person"; (3) "the history and characteristics of the person," including "whether, at the time of the current offense or arrest, the person was on probation [or] on parole"; and (4) the seriousness of the danger posed by the defendant's release. See 18 U.S.C. § 3142(g). In evaluating dangerousness, courts consider not only the effect of a defendant's release on the safety of identifiable individuals, such as victims and witnesses, but also "'the danger that the defendant

---

[1]    A violation of 18 U.S.C. § 844(i) is "an offense listed in section 2332b(g)(5)(B) of title 18, United States Code, for which a maximum term of imprisonment of 10 years or more is prescribed." 18 U.S.C. § 3142(e)(3)(C); see 18 U.S.C. § 2332b(g)(5)(B).

3

might engage in criminal activity to the detriment of the community.'" United States v. Millan, 4 F.3d 1038, 1048 (2d Cir. 1993) (quoting legislative history).

Where the evidence of guilt is strong, it provides "a considerable incentive to flee." Millan, 4 F.3d at 1046; see also United States v. Palmer-Contreras, 835 F.2d 15, 18 (1st Cir. 1987) (per curiam) (where "the evidence against defendants is strong, the incentive for relocation is increased"). Additionally, the possibility of a severe sentence is an important factor in assessing a defendant's likelihood of flight. See Jackson, 823 F.2d at 7; United States v. Martir, 782 F.2d 1141, 1147 (2d Cir. 1986) (defendants charged with serious offenses whose maximum combined terms created potent incentives to flee).

III.     The Defendant Should Be Detained Pending Trial

As a threshold matter, because the indictment charges a violation of 18 U.S.C. § 844(i), which is an offense listed in 18 U.S.C. § 2332B(g)(5)(B), there is a rebuttable presumption of detention under 18 U.S.C. § 3142(e)(3)(C). Further, detention is appropriate here under the § 3142(g) factors given the serious nature of the defendant's conduct, the weight of the evidence against the defendant, and the defendant's criminal history.

First, the conduct for which the defendant has been charged was extraordinarily dangerous. Lighting ten NYPD vehicles, as well as a trailer, in a populated area of Brooklyn shows a wanton disregard not only for NYPD officers who could have been near the scene and injured, but also for others in the area who could have been injured by the fires or involved in an accident. The defendant's criminal conduct caused law-abiding citizens to fear simply driving or walking around their community.

Second, the weight of the evidence against the defendant is strong. Surveillance video footage captured the defendant scaling the fence to enter the locked parking lot. Additional surveillance video tracked the defendant to a nearby bodega, where other video from the bodega shows the defendant opening his wallet and displaying his identification. Additionally, fingerprints from evidence left at the crime scene were consistent with those of the defendant. The strength of the evidence in this case, combined with the fact that the defendant faces a lengthy term of imprisonment, including a mandatory minimum sentence of five years' imprisonment, gives the defendant a strong incentive to flee.[2] See United States v. Zhang, 55 F.4th 141, 151 (2d Cir. 2022) (where the evidence of a defendant's guilt is strong, "it follows that the defendant faces an elevated risk of conviction (and of the attendant punishment), and therefore may present an elevated risk of flight"); United States v. Blanco, 570 F. App'x 76, 77 (2d Cir. 2014) (affirming district court's order of detention because, inter alia, defendant "face[d] a mandatory minimum prison sentence of five years, a possible maximum sentence of 40 years"); Millan, 4 F.3d at 1046 (providing that where evidence of guilt is strong, it provides "a considerable incentive to flee"); United States v. Bruno, 89 F. Supp. 3d 425, 431 (E.D.N.Y.

---

[2]     The government currently estimates that, based on the offense conduct and the defendant's criminal history, the advisory United States Sentencing Guidelines range of imprisonment will be 60 to 63 months' imprisonment.

2015) ("When evidence of a defendant's guilt is strong, and when the sentence of imprisonment upon conviction is likely to be long a defendant has stronger motives to flee.").

Third, the history and characteristics of the defendant also weigh in favor of detention. In the recent past, the defendant was arrested for criminally reckless conduct. On May 28, 2025, the defendant was arrested for obstructing government administration, disorderly conduct, and resisting arrest in connection with a demonstration. In May 2024, the defendant was similarly arrested for resisting arrest, obstructing government administration, attempted assault in the third degree, and disorderly conduct in connection with another demonstration.

Finally, the government understands that, on June 18, the NYPD issued a press release and photos of the defendant to alert the public that he was wanted for arson. Instead of turning himself in, it appears that the defendant destroyed his cell phone in an effort to avoid arrest. Nearly five weeks after committing the offense, the defendant ultimately self-surrendered after his lawyer and law enforcement coordinated in arranging his self-surrender. Additionally, it is the government's understanding that while the defendant was wanted for the instant offense, he failed to appear for a court conference scheduled for June 18, 2025, in connection with his criminal case out of Queens Criminal Court (Case Number CR-016062-24QN). The defendant's failure to adhere to court scheduled conferences and his delay in surrendering clearly indicate that he is a flight risk.

In sum, the defendant cannot be released without risking the safety of the community and the likelihood that he will not return to court as required. He should, therefore, be detained.

IV.    Conclusion

For the reasons set forth above, the government respectfully requests that the defendant be detained pending trial.

Respectfully submitted,

JOSEPH NOCELLA, JR.
United States Attorney

By:    /s/ Rebecca M. Urquiola
Rebecca M. Urquiola
Assistant U.S. Attorney
(718) 254-6049

cc:    Clerk of the Court (VMS) (By Email)
Counsel of Record (By Email)

5